

*Henry E. Mazurek*
*Partner*
*Direct (212) 655-3594*
*Fax (646) 682-9222*
*hem@msf-law.com*

October 1, 2021

**VIA ECF**

Hon. Margo K. Brodie
Chief United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Courtroom 6F
Brooklyn, NY 11201

Hon. William F. Kuntz, II
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Courtroom 6H
Brooklyn, NY 11201

          Re:    *United States v. David Motovich, et al.*, 21-CR-497 (WFK)

Dear Honorable Judges:

      We write on behalf of defendant David Motovich to respectfully alert the Court of important issues that impact this Court's Guidelines for the Division of Business Among District Judges ("Guidelines"), adopted pursuant to 28 U.S.C. § 137.

      Pursuant to E.D.N.Y. Local Rule 50.3.2(c)(1) ("Local Rule"), when criminal cases are "presumptively related," the government has an "affirmative obligation" to notify all assigned judges at the time of an indictment. The government delayed compliance with the Local Rule in this case, and in the separate cases against the three cooperating witnesses who previously pled guilty in presumptively related cases. This case and the three cases pending against the cooperating witnesses are now assigned to ***four*** different judges in this District. Respectfully, that result is anathema to the E.D.N.Y. Local Rules. While the division of business is left to the considerable discretion of the managing judges, there are important considerations of conservation of judicial resources and the appearance of justice which lead Mr. Motovich to request, pursuant to Local Rule 50.3.2(d), reassignment of these four cases to the judge assigned earliest to one of these presumptively related cases. *See* Local Rule 50.3.2(d) ("Any defendant may request reassignment to a judge whom the defendant contends has a case that is presumptively related pursuant to Section (b)(1)."). Indeed, where cases involve the same "scheme(s), transaction(s), or event(s)," there is a strong presumption in favor of relation and reassignment that is overcome only "upon a determination by the relevant judges that reassignment would not achieve a significant savings of judicial resources or serve the interests of justice." Local Rule 50.3.2(b)(2). Here both judicial

Hon. Margo K. Brodie
Hon. William F. Kuntz
October 1, 2021
Page 2 of 8

economy and the interests of justice favor these cases be heard by a single judge, per Local Rule 50.4, which permits reassignment of cases "in the interest of justice and the efficient disposition of the business of the court."

After conferring with counsel for co-defendant Marina Kuyan, we are informed that Mr. Currie joins our letter motion seeking reassignment under Local Rule 50.3.2(d).

## I.
## Procedural History

On August 24, 2021, Mr. Motovich was arrested on a criminal complaint charging him with bank fraud, aggravated identify theft and witness tampering. *See* ECF Doc. 1 (Aug. 20, 2021) ("Motovich Compl."). Three days later, on August 27, 2021, Kemal Sarkinovic, who is now a co-defendant in the case pending against Mr. Motovich, was arrested on a separate criminal complaint charging him with conspiracy to commit bank fraud. *See* ECF Doc. 1 (Aug. 28, 2021) ("Sarkinovic Compl.") ¶ 8.[1] On September 22, 2021, Mr. Motovich, Sarkinovic, along with co-defendants Marina Kuyan, and Joshua Markovics were charged in an 18-count indictment alleging operating an unlicensed money transmitter, failure to file Currency Transaction Reports ("CTRs"), bank fraud, money laundering, aggravated identity theft, and witness tampering, among other charges. *See* ECF Doc. 18 ("Indictment").

The Indictment, like the allegations in the criminal complaints against Mr. Motovich and Sarkinovic, centers on claims that Mr. Motovich and his co-defendants operated an unlicensed check cashing business located at Mr. Motovich's lumber company, through which he cashed checks for local contractors, deducting a fee of between approximately four and ten percent. Ind.¶¶ 11, 12-19. The Indictment alleges that the contractors frequented this alleged unlicensed check cashing business in an effort to avoid payroll tax obligations, and that these contractors preferred the allegedly unlicensed check casher to a licensed establishment that would have filed CTRs regarding their activities. Ind.¶ 12. According to the government, Mr. Motovich and his co-defendants established a series of shell companies and related bank accounts secretly controlled by Mr. Motovich into which checks from the contractors were deposited to conceal the unlicensed check cashing activities. Ind. ¶¶ 15, 20.

The government's allegations in the Indictment involve three cooperating witnesses referred to in the criminal complaints filed against both Mr. Motovich and Sarkinovic as Cooperating Witnesses 1, 2 and 3. *See* Motovich Compl. at 5-14 (discussing Cooperating Witnesses 1, 2 and 3); Sarkinovic Compl. at 4-11 (discussing Cooperating Witnesses 1 and 2). Specifically, the government alleges that Cooperating Witnesses 1 and 2 were contractors who operated building construction companies and cashed checks at Mr. Motovich's alleged illegal check cashing business to evade payroll taxes, and avoid the filing of CTRs for their checks. *See* Motovich Compl. ¶ 7; Sarkinovic Compl. ¶ 8. Both Cooperating Witnesses 1 and 2 pled guilty to informations charging payroll tax evasion, in violation of 26 U.S.C. § 7202. Motovich Compl. ¶

---

[1] Both the Motovich complaint and the Sarkinovic complaint are marked as ECF 1 on the docket sheet.

7, n.2; Sarkinovic Compl. ¶ 8, n.2.  The Motovich Complaint indicated that a third cooperating witness, Cooperating Witness 3, was a bank branch manager who allegedly transferred funds from at least some of the shell companies' bank accounts at Mr. Motovich's direction, although those accounts were purportedly owned by other individuals.  Motovich Compl. ¶ 14.  On August 20, 2021, the government indicated that Cooperating Witness 3 was scheduled to plead guilty to an information charging bank fraud in violation of 18 U.S.C. § 1344.  *Id*.  In subsequent conversations, the government indicated that Cooperating Witness 3 has since pled guilty to bank fraud prior to return of the Indictment.  All three cooperating witnesses have thus pled to charges inextricably intertwined with the allegations in the Indictment, and that are part of the same charged "criminal scheme(s), transaction(s) or event(s)" as the Indictment.  *See* Local Rule 50.3.2(b)(1).

## II.
## The Local Rule for Related Criminal Case Designation

The current version of the Guidelines for case management was amended and adopted by this Court, effective October 29, 2018.  These Guidelines evolved over time as a result of litigation, particularly in the definition of "related" cases for purposes of criminal case assignments.  *See United States v. Agate*, No. 08 Cr. 76 (NGG) (E.D.N.Y. March 13, 2008), 2008 WL 699513, at *1 (analyzing the history and application of Local Rule 50.3 in response to defendant's motion for reassignment in criminal prosecution); *United States v. Simels,* No. 08 Cr. 640 (DLI) (JG) (PKC), ECF Doc. 29 (E.D.N.Y. Oct. 10, 2008) (granting motion for reassignment by defense counsel on principles of statutory construction based on plain language of earlier version of related case rule at Local Rule 50.3(c)(B)).

The current version of Local Rule 50.3.2(b)(1), affecting criminal case assignments in this district, provides in pertinent part:

> There shall be a presumption that one case is "related" to another when the facts of each arise out of the same charged criminal scheme(s), transaction(s), or event(s), even if different defendants are involved in each case.

Local Rule 50.3.2(b)(1).[2]

Local Rule 50.3.2(b)(2) explains that where cases meet this test, there is a presumption in favor of relation and thus reassignment that is only overcome "upon a determination by the relevant judges that reassignment would not achieve a significant savings of judicial resources or serve the interests of justice."  Local Rule 50.3.2(b)(2).

---

[2]    This language was modified after litigation in *Simels* revealed that the wording in the prior Guidelines rule directed that cases should be deemed related only if the identity of all defendants were the same in multiple indictments or informations. *Simels,* No. 08 Cr. 640 (ILL), at ECF Doc. 24 at 3 (interpreting an earlier version of related case rule that "[c]riminal cases are 'related' only when … (B) more than one indictment or information is filed against the same defendant or defendants.").

Hon. Margo K. Brodie
Hon. William F. Kuntz
October 1, 2021
Page 4 of 8

    The Local Rules also created obligations on the United States Attorney's Office to help administer the related case Guidelines. Specifically, Rule 50.3.2.(c)(1) states:

> It is the affirmative obligation of the United States Attorney's Office ("USAO") to give notice to all relevant judges whenever it appears that one case may be presumptively related to another pursuant to Section (b)(1). Such notice shall be by letter and filed together with the indictment, information or Federal Criminal Rule 7(b) motion and addressed to each of the judges concerned. The letter shall set forth the fact relevant to deciding whether the indictment or information should be related to another case. The letter shall in addition state clearly whether its purpose is solely to provide notice to the Court under this rule, or whether the USAO seeks reassignment.

Local Rule 50.3.2.(c)(1).

    Finally, the Local Rules provide defendants with procedural protections in this process. Rule 50.3.2(d) provides in relevant part:

> Any defendant may request reassignment to a judge whom the defendant contends has a case that is presumptively related pursuant to Section (b)(1).

Local Rule 50.3.2(d).

    Indeed, the Rule specifically encourages the parties to act jointly in the interests of justice or to conserve judicial resources:

> Nothing in this Rule shall preclude the USAO and defendant from jointly seeking reassignment to another judge in the interests of justice or on the grounds that a significant savings of judicial resources would be achieved.

Local Rule 50.3.2(e).

    In this case, as explained above, the parties have conferred prior to this motion practice. The government has not shared with defense counsel its reasoning for not seeking a related case assignment here. It also did not advise whether it satisfied its obligation under Rule 50.3.2(c)(1) at the time of the prior two case assignments that succeeded the first indictment or information filed against a Cooperating Witness defendant in these related cases. The only information provided to defense counsel to date is that each of the preceding presumptively related cases was assigned to a uniquely different judge, resulting in three judges being assigned to the cases involving Cooperating Witnesses, all of which arise out of the "same charged criminal scheme(s), transaction(s), or event(s)." Local Rule 50.3.2(b)(1). This indictment is then the fourth case, or indictment/information, filed relating to these same set of facts. And, almost defying probabilities, this case resulted in a *fourth* district judge being randomly assigned.

    The government did not proceed jointly with us in seeking reassignment and relation of these cases to the earliest assigned judge.

Hon. Margo K. Brodie
Hon. William F. Kuntz
October 1, 2021
Page 5 of 8

### III.
### The Interests of Justice and Significant Savings of Judicial Resources Would Be Achieved by Relating These Cases to the Earliest Assigned Judge

As an initial matter, we recognize that the Guidelines for case assignment do not "vest any rights in litigants or their attorneys." Preamble to Local Rule 50.1. Still, the Rules expressly provide a procedural mechanism (Rule 50.3.2(d)) for defendants to state their position on case assignments, which we do here. While the defendants might not have a specific individual right to demand a particular case assignment, they are vested with an opportunity for notice and to be heard on issues that impact the public's interest in the fair administration of justice. Indeed, this is not unlike the substantial societal interest that drives judicial decisions under the federal Speedy Trial Act. *See, e.g., Barker v. Wingo*, 407 U.S. 514, 519 (1972) (the right to expedited process protects not only the interests of the defendant, but also the "societal interest in providing a speedy trial which exists separate from, and at time in opposition to, the interests of the accused;" finding an "affirmative obligation" on the government to bring a case on for trial promptly). Just as courts have found that the public has a substantial interest in a speedy trial, there is an important societal interest underpinning the district's Guidelines on case assignment. Specifically, as expressed in the Rules themselves, these rules arise out of a need to preserve judicial resources, and more importantly, to protect the interests of justice against competing or inconsistent rulings among district judges hearing similar or the same facts.

    A.    **The Interests of Justice Favor the Reassignment of Related Cases to Avoid Inconsistent Findings Arising Out of the Same Nucleus of Facts**

One of the driving principles under the "related" case rule is to "serve the interests of justice." Local Rule 50.3.2(b), (e). The interests of justice that are clearly implicated here are the possibility of inconsistent or competing rulings that arise out of common facts or transactions or events. Here, there are no fewer than four district judges that will be hearing and deciding issues relating to various parts of charged schemes arising out of the same nexus of related facts. There is thus a real risk of conflicting rulings, unwarranted sentencing disparities, and inconsistent restitution or forfeiture awards in the event of convictions. The rule of law and fair administration of justice depend on avoiding incompatible rulings in factually related cases whenever possible. *See e.g., United States v. Forbes,* 150 F. Supp. 2d 672, 681 (D.N.J. 2001) (finding no violation of court's related case rule where district court "will be required to sentence [cooperating witness defendants] and may have to take into account whether they provided "substantial assistance" to the government in its prosecution of these two defendants. Moreover, […] it would be unfair to the defendants in this matter if there should be inconsistent results within the district as a result of the assignment of the different cases to different judges."); *United States v. Warshak*, No. 06 Cr. 111, 2006 WL 3156444 at *1 (S.D. Ohio Nov. 2, 2006) (affirming related case finding, agreeing with movant that "transfer did not create the appearance of impropriety, but rather makes good sense," for reasons including*,* "[transfer] can ensure the avoidance of sentencing disparities among co-conspirators," and "transfer of such related cases allows for one judge to evaluate relative culpability and to consider substantial assistance motions that the related cases may have in common.").

Efficient administration of any financial penalties imposed in the event of conviction will also be impeded by the current arrangement. Second Circuit law is clear that imposition of joint and several liability among all of the defendants and cooperating witnesses is unavailable should four separate judges impose restitution or forfeiture judgments. *See United States v. Hagerman*, 506 F. App'x 14, 18 (2d Cir. 2012) (reversing district court's joint and several restitution order where only one defendant was before the court and the other individuals subject to the order were defendants before other courts in separate cases); *United States v. Aumais*, 656 F.3d 147, 156 (2d Cir. 2011) ("joint and several liability may be imposed only when a single district judge is dealing with multiple defendants in a single case (or indictment); so it would seem that the law does not contemplate apportionment of liability among defendants in different cases, before different judges, in different jurisdictions around the country."). Coordination of apportionment of these financial penalties will also be needlessly complex.

In short, the interests of justice favor the assignment of all four related cases before a single judge. Indeed, the Rules contemplate a "continuing" obligation on the government to provide notice of relatedness in criminal cases. Local Rule 50.3.2(c)(3) expressly states that "[t]he USAO should endeavor to provide notice that could avoid having two or more judges sentence different defendants or the same defendant in related cases." Thus, this Rule actually contemplates that the government at some point in this litigation of related cases will be obliged to provide notice and actually present a motion to reassign the three other cases of cooperating witness defendants who presumably already pleaded guilty to a filed information.[3] In other words, before any of the defendants charged in the three earlier-assigned cases could be sentenced, the government would be required under the rule to move to re-assign these cases to a single judge for sentencing. Rather than wait for some distant point in the future, this Court should act now, before substantial work is done by any one, two, or more of the judges, who may be required to decide substantive legal issues and resolve disputed issues of fact in these four cases, which all arise out of the same nucleus of common facts. To do otherwise, would risk the unfair administration of justice.

> **B.** **Significant Savings of Judicial Resources Favor the Reassignment of These Four Cases Before a Single District Court Judge**

The other factor the Local Rules direct judges to consider in the reassignment of related cases to a single judge is the "significant savings of judicial resources [that] would be achieved." Local Rule 50.3.2(e).

As stated above, the government remains in the best position to evaluate this factor because it has prepared all four cases for litigation. However, it is clear from earlier case filings that there

---

[3]     Of course, because the government presented these cases for prosecution, it has a lopsided information advantage on the potentially overlapping evidence and facts to be presented in these related cases. However, based on information provided in the publicly filed criminal complaints and the Indictment, we know that the earlier charged defendants were either prosecuted as an accessory to the bank fraud charges against Mr. Motovich or were alleged co-conspirators of the payroll tax evasion scheme that is premised within the unlicensed money transmitter count and related money laundering charges in Mr. Motovich's Indictment.

will be substantial overlap of documentary and testimonial evidence among these cases. These charges all arise from an alleged multi-year and multi-faceted scheme involving intertwining financial transactions. The government's charges are meandering but focused on the same events and transactions: the purported use of cash transactions to conduct an unlicensed money transmitter business, through alleged secretly controlled "shell" business entity bank accounts, enabling construction contractors to evade payroll tax. These winding transactions are allegedly connected by the various defendants charged in the four cases. Simply because the government alleges Mr. Motovich to be one of the "leaders" of the scheme, does not make his indictment less factually tied to the charged cooperating witness defendants who might testify against him. These defendants are all alleged to have acted in concert with Mr. Motovich at various portions of the charged crimes. They are either charged as accessories in the same crimes, such as in the bank fraud counts, or alleged to be factual co-conspirators in the unlicensed money transmittal business charged in his Indictment.

Judges in all four cases, therefore, would be obliged to learn the complicated and opaque trail of transactions from various corporate entities, through different bank accounts, and allegedly back to various charged actors in the scheme. This evaluation of financial records, money trails, corporate records, and bank activity would be overlapping for each of the judges who are called upon to decide levels of culpability, alleged loss amounts, credits against loss in these varied transactions, and whether the cooperating witnesses actually provided truthful and complete testimony for the purpose of evaluating possible substantial assistance motions brought by the government. To leave these substantial tasks to ***four different judges*** within this same district – at a time of severe backlog in federal criminal cases resulting from a continuing global pandemic – would not make sense. It would also be contrary to the Guidelines for the division of business in this district. *See United States v. Astra Motor Cars*, 352 F. Supp. 2d 370, 373 (E.D.N.Y. 2005) (relating criminal case to previously-filed civil forfeiture cases concerning overlapping assets where "substantial savings of judicial resources will result by allowing both the civil complaint and this present indictment to proceed before this Court," explaining that "the complexity of the [civil] case and . . . the direct relationship that allegedly exists between the properties listed as defendants in the civil complaint and the conspiracy which lies at the heart of the present indictment, it makes sense to have both cases proceed together."); *accord United States v. Flom*, No. 14-CR-507 RRM, 2015 WL 6506628, at *10 (E.D.N.Y. Oct. 27, 2015) (denying motion to transfer venue where case was related to previously-filed E.D.N.Y. indictments as "the interests of judicial economy weigh in favor of keeping this case in the same district as" the related cases " both of which are before this Court" because "all of these cases involve similar schemes and involve the same government prosecutors, FBI agents, and undercover agent, and it would be more economical for one judge to handle those cases.").

### C. The Local Rules Contemplate the Assignment of Related Cases to the Earliest Assigned Judge

The fairest and facially most impartial way of assigning related cases is to assign all four related cases to the earliest assigned judge. This resolution has the benefit of ensuring the appearance of complete impartiality. It is also the one expressed in the Local Guidelines on division of cases. While this resolution is mentioned explicitly in the subsection of the Guidelines

relating to civil cases, its force of argument applies equally to criminal cases. The Local Rules direct that "[c]ases which have been judicially determined to be related shall be assigned by the clerk to the judge to whom was assigned the case with the lowest docket number in the series of related cases." Local Rule 50.3.1(e).[4] In this way, no party can be accused of "forum shopping" by requesting any single judge among the four previously randomly assigned judges.[5]

      Mr. Motovich, and co-defendant Kuyan, respectfully request the Court to follow the Guidelines' instruction in re-assigning the four related cases.

### Conclusion

      For the foregoing reasons, we respectfully request that the Court follow the guidance in its Local Rules and reassign the Motovich Indictment and the three cases identified by the government in its sealed and *ex parte* notice to the Court to a single judge in the interests of justice and on grounds that significant savings of judicial resources would be achieved. Per the rules of this Court, that re-assignment should be to the judge who was assigned the case with the lowest docket number in the series of related cases. The application of this latter rule preserves the public appearance of impartiality and fair administration of justice.

Respectfully submitted,

/s/ HEM
Henry E. Mazurek
Ilana Haramati
Meister Seelig & Fein LLP

Mark E. Bini
Reed Smith LLP

*Counsel for Defendant David Motovich*

/s/ KTC
Kelly T. Currie
Danielle Giffuni
Crowell & Moring LLP

*Counsel for Defendant Marina Kuyan*

cc:    Counsel of record (*via ECF*)

---

[4] This outcome is consistent with the government's obligations under Local Rule 50.3.2(c). If the government had timely noticed the relation at the time of filing of each charging instrument, it is likely that this case and the other cases would be assigned to the judge with the earliest filed criminal case.

[5] Indeed, at this point, given the sealed filings in the earlier three assigned cases, defendants have no insight as to which judge in this district was assigned to the earliest filed case.