UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA,                      :
                                               :
                    v.                         :        **MEMORANDUM & ORDER**
                                               :        21-CR-497 (WFK)
DAVID MOTOVICH,                                :
                                               :
                         Defendant.            :
-------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

Before the Court are Defendant David Motovich's ("Defendant's") motions *in limine*, ECF No. 242; *see also* ECF No. 243; the Government's motions *in limine*, ECF No. 244; the Government's motion to preclude Defendant's proposed expert testimony, ECF No. 246; the Government's motion to preclude certain cross-examination, ECF No. 270; and the Government's motion to preclude Defendant's proposed jury instructions as to Count One, ECF No. 267. For the reasons set forth below, Defendant's motions *in limine* are GRANTED in part and DENIED in part; the Government's motions *in limine* are GRANTED in part, RESERVED in part, and DENIED in part; the Government's motion to preclude Defendant's proposed expert testimony is GRANTED; the Government's motion to preclude certain cross-examination is GRANTED; and the Government's motion to preclude Defendant's proposed jury instructions as to Count One is RESERVED.

## I.    BACKGROUND

The Court assumes the parties' familiarity with the background of this case, which the Court previously summarized in its June 11, 2024 Memorandum and Order denying Motions to Dismiss the Indictment, Motion to Suppress, Motion for a Bill of Particulars, and Motion to Disclose *Brady* Materials. *See* ECF No. 264.

## II.   LEGAL STANDARD

"The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *Gorbea v. Verizon New York, Inc.*, 11-CV-3758, 2014 WL 2916964, at *1 (E.D.N.Y. June 25, 2014) (Matsumoto, J.). "Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *Id.* (quoting *United States v. Paredes,* 176 F.Supp.2d 179,

1

181 (S.D.N.Y. 2001) (Leisure, J.) (internal quotation marks omitted). Moreover, "courts considering a motion *in limine* may reserve decision until trial, so that the motion is placed in the appropriate factual context." *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011) (Matsumoto, J.). This determination is "subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in [earlier statements]. Indeed[,] even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Luce v. United States*, 469 U.S. 38, 41-42 (1984).

Relevant evidence is generally admissible at trial. Fed. R. Evid. 402. Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. However, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### III.    DEFENDANT'S MOTIONS *IN LIMINE*

Defendant moves to preclude the Government from offering evidence of or referring to: (1) Defendant's wealth, spending, and lifestyle; (2) the term "shell company" or "shell companies;" (3) the term "Motovich Check-Cashing Business;" (4) uncharged conduct regarding allegedly fraudulent certificates of insurance; and (5) *ad hominem* attacks on Defendant, specifically evidence and references to Defendant's vaccination status or allegedly fake or fraudulent documents found in his apartment. *See* Motovich Notice of Motions *in limine*

2

("Motovich Notice") at 1, ECF No. 242; Motovich Memorandum in Support of Motions *in limine* ("Motovich Mot. *in Limine*") at 8, ECF No. 243. The Court addresses each in turn.

### A.   Evidence or Argument Regarding Defendant's Wealth, Spending, and Lifestyle

Defendant argues the Government should be precluded from offering evidence of or referencing his wealth, spending, and lifestyle, specifically moving to exclude references to Defendant's purported spending on "luxury items" such as those detailed in the Indictment, renovations to Defendant's "penthouse apartment," and use of private jets. Motovich Mot. *in Limine* at 1-2. Defendant asserts "[n]one of the charges in this matter require detail of how [Defendant] spent funds," such details are "irrelevant to the issues to be decided," and even if such details were relevant, "the potential for unfair prejudice vastly outweighs any miniscule probative value." *Id.* at 3.

The Government disagrees, arguing evidence regarding Defendant's wealth and spending is "relevant and probative of the crimes charged." Government Opposition to Motovich Mot. *in Limine* ("Gov't Opp'n") at 1, ECF No. 260. The Government maintains it seeks to introduce evidence pertaining to Defendant's "purchases of luxury goods and apartment renovations that he paid for with money from" bank accounts "not to call attention to [Defendant] for his being wealthy, but rather to demonstrate that it was [Defendant] who controlled the shell accounts, and to show the ways in which [Defendant] used the illegal proceeds that he deposited into the accounts." *Id.* at 2. The Government asserts such evidence is specifically relevant to the money laundering and unlicensed check-cashing business charges, as Defendant's "use of those funds—in part by spending it [sic] on himself and his family—is direct evidence of his committing the charged crimes, as well as his overarching motive for the criminal conduct." *Id.*

The Court agrees with the Government and denies Defendant's motion to preclude the Government from offering evidence of Defendant's wealth, spending, and lifestyle. The Court agrees "appeals [to class prejudice] are improper and have no place in a court room," *United States v. Stahl*, 616 F.2d 30, 33 (2d Cir. 1980), and the Government represents it will make no such appeals when offering such evidence, Gov't Opp'n at 2, 4. Instead, the Government may offer this spending evidence as both direct and motive evidence of Defendant's alleged offenses, demonstrating (1) Defendant's control over the accounts through which he allegedly laundered the proceeds of his money transmitting business and (2) the benefits he received "personally from the funds in the accounts." *Id.* at 1-2. Such evidence is relevant to the charged offenses. *See United States v. James*, 607 F. Supp. 3d 246, 264 (E.D.N.Y. 2022) (Seybert, J.) ("The evidence may show that [d]efendant's funding for his personal spending came from a pre-existing, legitimate source of income, or, conversely from his business through which he carried out the alleged scheme. If the latter, then the wealth evidence is relevant to Defendant's motive to commit the alleged offenses.").

Defendant's argument that it is "undisputed" that Defendant was involved in and used money in the accounts, Motovich Reply in Support of Motions *in limine* ("Motovich Reply") at 1-2, ECF No. 266, is unavailing given Defendant allegedly "set up the accounts in the names of nominees while secretly orchestrating the transactions within each account," Gov't Opp'n at 2. Moreover, "[a] syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it." *Old Chief v. United States*, 519 U.S. 172, 189 (1997).

Further, the Court recognizes the Government's less prejudicial alternatives to this spending evidence is part of the Court's Rule 403 analysis. *United States v. Segui,* 19-CR-188,

4

2019 WL 8587291, at *12 (E.D.N.Y. Dec. 2, 2019) (Matsumoto, J.) ("Thus, in considering whether to admit potentially prejudicial evidence, a court should consider whether 'there is sufficient other, less prejudicial evidence that makes the same point.'") (quoting *United States v. Barret*, No. 10-cr-809, 2011 WL 6704862, at *13 (E.D.N.Y. Dec. 21, 2011) (Matsumoto, J.)) (cleaned up). However, while "evidence that the accounts were used to pay [Defendant's] credit card bill and his attorney" may be "more straightforward, and less prejudicial means of demonstrating" Defendant allegedly benefitted from the money in the accounts, Motovich Reply at 1-2, such evidence would be significantly less probative of the Government's asserted motive for Defendant's alleged criminal activity: "his own financial profit or business," Gov't Opp'n at 2; *cf. Old Chief*, 519 U.S. at 182-83 ("If an alternative were found to have substantially the same or greater probative value but a lower danger of unfair prejudice, sound judicial discretion would discount the value of the item first offered and exclude it if its discounted probative value were substantially outweighed by unfairly prejudicial risk."); *see generally* Gov't Opp'n at 2 ("Further, [Defendant] has been charged with running an unlicensed check-cashing business, and evidence of [Defendant's] use of funds in the accounts will rebut his anticipated argument that he did so, not for his own financial profit or business, but merely as a favor to assist family members and friends."). The Court agrees Defendant's "use of these accounts, which is reflected in such spending," Gov't Opp'n at 2-3, is probative of and relevant to the charged crimes, and such probative value is not substantially outweighed by the danger of unfair prejudice. Therefore, the Court denies Defendant's motion to exclude evidence or argument regarding Defendant's wealth, spending, and lifestyle.

**B.      Evidence or Argument Using the Term "Shell Companies"**

Defendant moves under Rule 403 to "preclude the Government from using the term 'shell company' to describe the entities it alleges were involved in the conduct charged in the Indictment," as using such a term with "little to no probative value[] would confuse the issues in the case, be misleading to the jury, and be unfairly prejudicial." Motovich Mot. *in Limine* at 3. The Government, on the other hand, argues "the term 'shell company' is highly relevant to the charged offenses and refers to precisely what the entities are, thus clarifying the issues and aiding juror comprehension." Gov't Opp'n at 4. The Court agrees with the Government and denies Defendant's motion to preclude the Government from using the term "shell company" or "shell companies."

The Government asserts:

> These entities—including Ago & Alaudin Contracting Corp., CNBC Construction Corp., SGS Construction Corp., Midwood Building Corp., Midwood USA Consulting, M&M USA Consulting, Advertising on the Go, ZKC NY Inc., and others—are corporations that have no employees, conduct no business, and file no taxes. The government will prove at trial that they were created for the purpose of appearing to be real companies engaged in business operations, when in reality they were used to hide the defendant's illegal check-cashing and other crimes.

*Id.* at 4-5. The Government argues the evidence will show the term "'shell company' is therefore a reasonable and accurate characterization, not an inflammatory description detached from the issues being tried." *Id.* at 5.

The Court finds the Government's stated evidence is highly relevant and, "should the Government be able to establish a factual predicate that shows the subject entities are shell companies prior to usage of the descriptive term," the Court believes such terms would be descriptive, probative, and not unduly prejudicial. *United States v. Runner*, 18-CR-0578, 2023 WL 3727532, at *5 (E.D.N.Y. May 30, 2023) (Seybert, J.); *see also United States v. Guo,* 23-CR-

118, 2024 WL 1862022, at *4 (S.D.N.Y. Apr. 29, 2024) (Torres, J.) ("It is true that at least one court in this Circuit has found that the terms shell company and shell corporation could be perceived to have a pejorative meaning. *United States v. Watts*, 934 F. Supp. 2d 451, 482 (E.D.N.Y. 2013) [(Matsumoto, J.)]. But, to the extent that the terms accurately describe entities and individuals at issue, the Court cannot agree that they are unfairly prejudicial."); *see generally Shell Corporation*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("A corporation that has no active business and usu. exists only in name as a vehicle for another company's business operations — Also termed *shell company*."). Therefore, so long as the Government lays a sufficient factual predicate that a particular entity is a "shell company" before using the term to so describe, the Government is not precluded from using the term "shell company" or "shell companies" and denies Defendant's motion.

    **C.**    **Evidence or Argument Using the Term "Motovich Check-Cashing Business"**

Defendant moves to preclude the Government from using the term "Motovich Check-Cashing Business" under Federal Rules of Evidence 401 and 403 because "the use of such a term would be misleading, unduly prejudicial, and without evidentiary basis." Motovich Mot. *in Limine* at 4-5. Defendant asserts "[t]he 'Motovich Check-Cashing Business' is undoubtedly a suggestive and unfairly prejudicial descriptive term: It suggests, in a deeply confusing way, the existence of the very business that the Government must prove existed to establish various of the charges in the Indictment." *Id.* at 6; *see also* Motovich Reply at 5 ("It is a term completely made up by the Government that assumes the truth of the allegations that the Government is required to prove beyond a reasonable doubt in order for [Defendant] to be found guilty of nine counts in the Indictment."). The Government disagrees, arguing the term "Motovich Check-Cashing Business" should be permitted because:  such a term "is supported by the [G]overnment's

7

allegations;" "there is no other existing name for the operation;" it will help the jury distinguish between Coney Island Payroll Services—a licensed check-cashing business—from that allegedly operated by Defendant; and the term is not unfairly prejudicial. Gov't Opp'n at 6-7. The Government concedes it "must prove the existence of this operation at trial." *Id.* at 6.

The Court agrees with Defendant and grants the motion to preclude the Government from using the term "Motovich Check-Cashing Business" at trial. While the use of such a term would undoubtedly aid the Government in proving its case, this is exactly the problem: the Government itself concedes it has the burden of "prov[ing] the existence of this operation at trial." *Id.* Further, and in contrast with the term "shell company," "Motovich Check-Cashing Business" is not legally defined term but rather a crated fiction conjured up by the Government. Allowing the Government to use this term "assumes the truth of allegations that the Government is required to prove," Motovich Reply at 5, and the Court therefore excludes such evidence as unfairly prejudicial. *See United States v. Sterritt*, 21-CR-193, 2023 WL 7386660, at *10 (E.D.N.Y. Nov. 8, 2023) (Matsumoto, J.) (reserving decision on whether to provide a copy of the indictment to the jury in a complicated securities fraud case until the parties submitted a proposed copy of the indictment to the court reflecting the court's instructions that: "headings in the indictment [should] be amended to eliminate *conclusory* language" and urging the parties to collaborate "to make proposed redactions or modifications *to minimize unnecessarily suggestive or potentially prejudicial descriptive terms*," including phrases like "'The Corrupt Companies and Related Entities'") (emphasis added); *see generally* Fed. R. Evid. 403 Advisory Committee's Note (1972 Proposed Rules) (defining "unfair prejudice" as "an undue tendency to suggest decision on an improper basis"). As such, the Government is precluded from using the term "Motovich Check-Cashing Business."

8

**D.      Evidence of Allegedly Fraudulent Certificates of Insurance**

Defendant argues the Government should be precluded from admitting evidence that

Defendant allegedly created fraudulent certificates of insurance as "irrelevant, confusing, and

unduly prejudicial" insurance under Federal Rules of Evidence 401 and 403 given the

Government did not charge Defendant "with any substantive violations related to these allegedly

fraudulent insurance certificates." Motovich Mot. *in Limine* at 6. Defendant contends such

evidence is neither "direct proof of the charged offenses," Motovich Reply at 7, nor

"'inextricably intertwined' with the charged offenses," Motovich Mot. *in Limine* at 7.

The Government rejects Defendant's assertions that the allegedly fraudulent certificates

of insurance are "'uncharged' 'other acts' evidence." Gov't Opp'n at 10. Instead, the

Government asserts these certificates "are direct and powerful evidence that establish the

charged offenses as they served as a primary vehicle by which the defendant accomplished his

criminal activity." *Id.* at 7; *see also id.* at 12 ("The fraudulent insurance certificates are an

important component of the check-cashing arrangement, including explaining why customers

paid [Defendant] a much higher transaction fee than they would have paid had they instead used

a legitimate, licensed check-cashing business.").

Evidence is "not other-act evidence within the meaning of [Federal Rule of Evidence]

404(b)" when it is "admissible to prove material facts other than [Defendant's] propensity to

commit a crime[.]" *United States v. Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992). Specifically,

"evidence of uncharged criminal activity is not considered other crimes evidence under [Federal

Rule of Evidence 404(b)] if it arose out of the same transaction or series of transactions as the

charged offense, if it is inextricably intertwined with evidence regarding the charged offense, or

if it is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d

9

39, 44 (2d Cir. 2000) (internal quotation marks and citation omitted).  "On this basis, the trial

court may admit evidence that does not directly establish an element of the offense charged, in

order to provide background for the events alleged in the indictment.  Background evidence may

be admitted to show, for example, the circumstances surrounding the events or to furnish an

explanation of the understanding or intent with which certain acts were performed." *United*

*States v. Ashburn*, 11-CR-303, 2015 WL 588704, at *10 (E.D.N.Y. Feb. 11, 2015) (Garaufis, J.)

(internal quotation marks and citations omitted).  Further, "to be relevant, evidence need only

tend to prove the government's case, and evidence that adds context and dimension to the

government's proof of the charges can have that tendency." *Id.* at *11 (internal quotation marks

and citations omitted).

  The Court agrees with the Government and denies Defendant's motion to preclude

evidence of the allegedly fraudulent certificates of insurance.  The Government asserts as follows

regarding the Indictment's allegations and what the Government "expects to prove at trial:"

> [Defendant] operated an unlicensed check-cashing operation to
> profit from New York businesses that wished to evade paying taxes
> and worker's compensation insurance for their employees.  (*See*
> [Indictment] ¶¶ 11-12, [ECF No. 18]).  For that purpose, these
> businesses needed to obtain large amounts of cash that would not be
> reported to the federal government, including the Internal Revenue
> Service ("IRS").  (*See id.* ¶ 11).  [Defendant] provided owners of
> these businesses—several of whom will be witnesses at trial—
> currency in excess of $10,000 without filing the required Currency
> Transaction Reports ("CTRs"), in exchange for substantially higher
> transaction fees than a licensed check-cashing business would
> charge.  (*Id.* ¶¶ 9-10, 12).  [Defendant] instructed his check-cashing
> customers to issue checks from their business accounts to one of his
> shell companies, thereby making the checks appear to be for
> legitimate business expenses, such as subcontracting work.  (*See id.*
> ¶14).  As part of the scheme, [Defendant] provided customers with
> fraudulent insurance certificates and phony invoices.  (*Id.* ¶ 14)
> ("[Defendant] . . . also provided fraudulent documents, such as
> certificates of insurance purportedly issued in the name of the
> relevant Shell Company, to customers of the Motovich Check-

> Cashing Business for the customers to show to federal or state
> authorities in the event of a tax or workers compensation audit.")).
> These fraudulent certificates were then used by [Defendant's]
> check-cashing customers to show anyone who asked, including
> accountants and auditors, that the shell company had provided
> purported legitimate services and had insurance coverage.

Gov't Opp'n at 9-10. The Court finds the allegedly fraudulent certificates of insurance are

highly probative of the charged crimes, and are both "inextricably intertwined with the evidence

regarding the charged offense[s], or if it is necessary to complete the story of the crime on trial."

*Carboni*, 204 F.3d at 244. Indeed, such allegedly "fraudulent insurance certificates are part of

the story expressly alleged in the Indictment and an integral part of [Defendant's] criminal

scheme," i.e., the alleged unlicensed money transmitting business and related activities

conducted by Defendant. Gov't Opp'n at 12-13. They are not, as Defendant argues, "far afield

from the charged offenses" or "likely to confuse the jury and lead to a mini-trial on a collateral

issue." *See* Motovich Reply at 8. The Court further finds that the probative value of such

evidence far exceeds the prejudicial effect under Rule 403, and therefore denies Defendant's

motion to exclude evidence of the allegedly fraudulent certificates of insurance. *See United*

*States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990) (finding evidence was not unfairly

prejudicial in part because the acts "did not involve conduct any more sensational or disturbing

than" the charged crimes).

### E.    *Ad Hominem* Attacks on Defendant

Defendant moves to "preclude the Government from making *ad hominem* personal

attacks against [Defendant] at trial, including by referencing unrelated, allegedly fraudulent

behavior" such as evidence pertaining Defendant's vaccination status or "other allegedly 'fake'

documents found" in Defendant's apartment. Motovich Mot. *in Limine* at 8. For the reasons

discussed *infra* at 31-33, Defendant's motion is granted. To be clear, however, in granting

11

Defendant's motion to preclude *ad hominem* attacks on him, the Court is not precluding the Government from referring to documents as fraudulent, stolen, or fake, so long as any such reference is made after laying a factual and evidentiary predicate for such terms.

## IV.   THE GOVERNMENT'S MOTIONS *IN LIMINE*

### A.   Evidence or Arguments Which Are Purportedly Irrelevant, Unfairly Prejudicial, Misstate the Law, or Invite Jury Nullification

The Government seeks to "preclude evidence and arguments that are irrelevant, unfairly prejudicial, misstate the law or invite jury nullification, such as (a) payroll tax evasion is widespread in the construction industry, [Defendant is] being selectively prosecuted or [Defendant] had good motives, (b) the [G]overnment's bank fraud charges are novel or that funds deposited into the shell company bank accounts were not property of the banks, (c) the banks were not victims because they were negligent or because of the actions of their employees, and (d) references to the potential punishment [Defendant] face[s] should [he] be convicted." Gov't Mot. *in Limine* at 3.  The Court addresses each request in turn.

With respect to the Government's request to preclude Defendant from positing payroll tax evasion is widespread in the construction industry or Defendant is being selectively prosecuted, *id.* at 6-8, Defendant states he has "no intention of making" arguments at trial that "everyone is doing it" or that he is being "selective[ly] prosecut[ed]." Motovich Opp'n at 3.  Therefore, these portions of the request are denied as moot.  Defendant also argues the Court should dismiss as "premature and without merit" the Government's motion "[t]o the extent the Government intends this motion to more broadly exclude evidence regarding how the construction industry operates or about the motivations of the witnesses and [Defendant]." *Id.* at 3.  The Court does not preclude all such evidence.  Instead, the Court precludes the specific arguments detailed above regarding widespread payroll tax evasion and selective prosecution.

12

With respect to the Government's request to preclude Defendant from positing he had good motives, Gov't Mot. *in Limine* at 6-8, the Court grants the motion. While the Court precludes evidence of Defendant's good motive to commit a crime, it does not preclude all intent and motive evidence. Defendant is correct that evidence of *good faith belief* is a complete defense to fraud because it negates the requirement to act with specific fraudulent intent to commit the charged crimes. Motovich Opp'n at 4; *see also United States v. Graham*, 16-CR-786-2, 2019 WL 2366724, at *3-4 (S.D.N.Y. May 31, 2019) (Roman, J.). However, Defendant conflates good faith belief and good motive. A defendant's "honest belief in the truth of the statements or representations made in perpetrating the alleged fraud," *Graham*, 2019 WL 2366724, at *3, is distinct from a defendant's good motive to act in the first place. In other words, good motive is irrelevant to Defendant's guilt or innocence and the Court therefore precludes such evidence. *See also United States v. Chenault*, 844 F.2d 1124, 1130 (5th Cir. 1988) (affirming jury instructions distinguishing between motive and good faith and noting "[g]ood motive alone is never a defense where the act done or omitted is a crime . . . . the motive of the accused is immaterial except insofar as evidence of motive may aid determination of state of mind or intent") (quoting jury instructions); *United States v. Snow*, 670 F.2d 749, 754 (7th Cir. 1982) ("[E]vidence which merely relates to his good motive does not tend to disprove (the defendant's) consciousness of wrong doing.") (quoting *United States v. Cullen*, 454 F.2d 386, 392 (7th Cir. 1971)).

With respect to the Government's request to preclude Defendant from arguing (1) the Government's bank fraud charges are novel, (2) the Government is going down a slippery slope, or (3) funds deposited into the shell company bank accounts were not property of the banks, Gov't Mot. *in Limine* at 9-10, the Court grants the motion. The novelty or unusualness of the

13

bank fraud charges is irrelevant to the question presented to the jury—whether or not Defendant

committed bank fraud. *See United States v. Stewart*, 03-CR-717, 2004 WL 113506, at *2

(S.D.N.Y. Jan. 26, 2004) (Cedarbaum, J.). Arguing the Government is going down a slippery

slope in pursuing such charges is similarly irrelevant to Defendant's guilt or innocence.

Introducing such arguments would only serve to misstate the issues and confuse the jury. In

addition, the Court previously rejected Defendant's argument that the bank account funds were

not the banks' property. *See* June 11, 2024 Memorandum and Order at 7, ECF No. 264 ("[T]he

Supreme Court held banks have property rights in the funds in their customers' accounts.")

(citing *Shaw v. United States*, 580 U.S. 63, 66 (2016)). As the Government notes, these are

"legal matters within the sole province of the Court." Gov't Mot. *in Limine* at 10 (citing *Stewart*,

2004 WL 113506, at *2 and *United States v. Ingredient Tech. Corp.*, 698 F.2d 88, 97 (2d Cir.

1983)). As such, the Court precludes these lines of argument.

 With respect to the Government's request to preclude Defendant from arguing the banks

were not victims because they were negligent or because of the actions of their employees, Gov't

Mot. *in Limine* at 11-12, Defendant advises he does not intend to introduce any such evidence or

present such arguments, *see* Motovich Opp'n at 5. As such, this request is denied as moot.

 With respect to the Government's request to preclude Defendant from arguing references

to the potential punishments, Gov't Mot. *in Limine* at 12-15, Defendant advises he does not

intend to introduce evidence or present arguments regarding potential punishments faced by

Defendant if convicted, and therefore this portion of the request is denied as moot. *See* Motovich

Opp'n at 6. However, Defendant objects, based on his Sixth Amendment Confrontation Clause

rights, to precluding cross-examination of cooperating witnesses "regarding the benefits they

expect to receive as a result of their cooperation with the Government." *Id.* The Supreme Court

14

has held "that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974) (citing *Greene v. McElroy*, 360 U.S. 474, 496 (1959)).  However, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).  Therefore, the Court does not preclude Defendant from raising potential benefits a cooperating witness may receive in exchange for their testimony. *See, e.g.*, *United States v. Kohan*, 806 F.2d 18, 23 (2d Cir. 1986) ("[T]he court's discretion cannot be expanded to justify a curtailment of cross-examination that keeps from the jury relevant and important facts bearing on the trustworthiness of crucial testimony.") (cleaned up).  However, the Court precludes Defendant from cross-examining witnesses to draw parallels to potential punishments faced by Defendant, including questions regarding specific sentencing guidelines ranges and sentences a cooperating witness may face in comparison to those faced by Defendant. *See, e.g.*, *United States v. Reid,* 300 Fed. Appx. 50, 52 (2d Cir. 2008) (summary order); *United States v. Graziano*, 558 F. Supp. 2d 304, 327 (E.D.N.Y. 2008) (Bianco, J.) ("The presentation of such information to the jury creates a substantial danger that the jury will consciously or subconsciously allow knowledge of such punishment to impact on their deliberations on the question of the defendant's guilt or innocence.").

### B.      Evidence or Arguments Regarding Defendant's Personal and Family Histories, Religion, Conditions of Pretrial Release, Prior Commission of "Good Acts," or Non-Commission of Other "Bad Acts"

The Government argues evidence of Defendant's personal and family histories, religion, and conditions of pretrial release or any other similar factors, should be precluded "absent a

15

showing that any such factor bears on their guilt." Gov't Mot. *in Limine* at 15. The Court agrees.

Defendant contends evidence related to his family or religious background may be relevant and introduced for a permissible purpose, including "to provide the jury with a general understanding of his business operations," or, with regards to religion, to provide "the jury with an understanding of his relationships with the cooperating witnesses and customers of the alleged check-cashing business." *Id.* at 10-11. However, evidence of Defendant's family background and religion properly constitutes character evidence governed by Federal Rule of Evidence 404(a)(2). Rule 404(a)(2) allows for the admission of evidence of a person's character or character trait as proof that a defendant acted in accordance with that character or trait *only if* it constitutes evidence of a pertinent trait. Testimony related to Defendant's religious and family background is not evidence of a pertinent trait. *See United States v. Harris*, 491 F.3d 440, 447 (D.C. Cir. 2007) ("[T]estimony whose purpose was . . . to cast Roundtree in the sympathetic light of a dedicated family man who spent the evening before his criminal adventure talking with his mother, playing with his son, and caring for his girlfriend . . . is unassailable; it is familiar ground that while a criminal defendant can put character in issue, the evidence can concern only a 'pertinent trait of character.'"). Therefore, the Court grants the Government's motion to preclude such evidence.

The Government also seeks to preclude evidence of Defendant's "prior commission of 'good acts'—including [his] work as businessmen, [his] role[] as [a] job creator[] or any charitable giving—or to offer proof of [his] non-criminal activities to seek to disprove the [Defendant's] guilt of the crimes charged." Gov't Mot. *in Limine* at 15-16; *see also id.* at 15-18.

16

Federal Rule of Evidence 404(b)(1) prohibits the admission of evidence of any other act "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." *See also United States v. Dawkins*, 999 F.3d 767, 792 (2d Cir. 2021) ("No less than evidence of a defendant's prior 'bad acts' used to show that he committed the crime charged, such 'good acts' evidence is only relevant if we assume that a defendant acted in conformity with those prior good acts—i.e., if we make the exact propensity inference Rule 404(b)(1) is designed to prohibit."). In opposition, Defendant argues he has no intention of introducing evidence of prior commission of good acts or non-commission of bad acts to establish he "acted in conformity with a particular character trait in contravention of Federal Rule of Evidence 404." Motovich Opp'n at 10. As such, the Government's request with respect to prior acts evidence is denied as moot.

### C.     Evidence or Arguments Relitigating Pretrial Decisions or Legal Determinations

The Government seeks to preclude the introduction of argument or evidence "contrary to court rulings, relat[ing] to legal issues required to be raised pretrial or concern[ing] legal questions that are otherwise within the sole province of the courts." Gov't Mot. *in Limine* at 18. Specifically, the Government seeks to preclude argument that (1) "lack of any financial harm is a relevant factual consideration for the jury's deliberation," *id.* at 20, (2) "John Doe 1, who the government expects will testify at trial, initially provided certain personal identifying information to Markovics, [Defendant] cannot be guilty of aggravated identity theft," *id.* at 20, and (3) "the legality or reasonableness" of "judicially authorized searches of [Defendant's] penthouse apartment, Coney Island Payroll Services, Midwood Lumber and certain iCloud and email accounts," *id.* at 22. The Court grants in part and reserves its decision in part the Government's motion.

17

The Court will not permit argument or questioning on issues that have "been litigated and decided." *United States v. Lights*, 15-CR-721, 2016 WL 7098633, at *2 (S.D.N.Y. Dec. 5, 2016) (Sweet, J.). "The court cannot and will not permit this case to become a referendum before the jury on the appropriateness or legality of government conduct that has already been found to be appropriate and lawful and which has no bearing on the reliability of the evidence offered against defendants." *United States v. Dupree*, 833 F. Supp. 2d 255, 272 (E.D.N.Y. 2011) (Matsumoto, J.), *vacated and remanded on other grounds*, 706 F.3d 131 (2d Cir. 2013).

In seeking to preclude argument that lack of financial harm is a relevant factual consideration for the jury's deliberation, the Government notes, "[s]hould the court rule . . . that harm and intent to harm are not elements of bank fraud," Defendant should be precluded from arguing that such factors are relevant. Gov't Mot. *in Limine* at 19-20. Defendant asserts he has "no intention of arguing that a bank must have 'ultimately suffered any monetary loss' for a defendant to be found guilty of bank fraud." Motovich Opp'n at 12 (quoting *Shaw*, 580 U.S. at 67). To the extent the Government seeks to preclude Defendant from arguing bank fraud requires a showing of financial loss, or intent to cause financial loss, the Court agrees such a line of argument would be improper. The Court already opined on the merits of such a theory in its decision on Defendant's motion to dismiss, and therefore grants the Government's motion to preclude such arguments. *See* June 11, 2024 Memorandum and Order at 8-9, ECF No. 264 ("The Supreme Court squarely held [18 U.S.C.] § 1344(1) demands neither a showing of ultimate financial loss nor a showing of intent to cause financial loss. Nor does [18 U.S.C.] § 1344(2) require the Government to prove that the defendant's scheme created a risk of financial loss to the bank.") (cleaned up). The Court will not at this time address the parties' arguments regarding whether the bank fraud statute's requirement that the defendant know the scheme would likely

18

harm the bank's property interest means the scheme must have placed the bank at a risk of financial loss. Such arguments are more appropriately addressed in relation to the jury charge, and the Court reserves decision until that time.

In seeking to preclude argument that, "because John Doe 1, who the government expects will testify at trial, initially provided certain personal identifying information to Markovics, [Defendant] cannot be guilty of aggravated identity theft," Gov't Mot. *in Limine* at 20, the Government argues "the Court should reject this argument because the aggravated identity theft statute does not require the government to prove that [Defendant] illegally obtained John Doe 1's means of identification, so long as it proves that [Defendant] knowingly used it without lawful authority, such as in the situation where a person might initially acquire lawful possession of someone else's identification but then uses it in an unauthorized manner," *id.* at 21. The Court has not made a final determination on this issue. *See generally* June 11, 2024 Memorandum and Order at 12-16, ECF No. 264; *see also* Motovich Opp'n at 13. Furthermore, the Court finds this issue is better settled at the jury charge conference, and reserves decision until that time.

As to the Government's request that the Court preclude any argument as to the reasonableness of the searches, the Government argues "[a]ny attempt, subtle or otherwise, by [Defendant] to suggest at trial that these searches were somehow improper or that law enforcement acted unreasonably have no bearing on [Defendant's] guilt or innocence." Gov't Mot. *in Limine* at 22. Defendant argues this request should be denied because "the Government has not provided any information regarding what special agents it intends to call at trial, let alone the subject matter they will testify about, [Defendant] does not yet know what, if anything, regarding the 'legality or reasonableness' of the Government's searches might be relevant to inquire about upon cross-examination." Motovich Opp'n at 13-14. The Court does not find

Defendant's argument persuasive.  In its decision on Defendant's motion to suppress, the Court

rejected Defendant's argument that the searches at issue were unreasonable.  *See* June 11, 2024

Memorandum and Order, ECF No. 264.  To the extent Defendant now seeks to challenge the

reasonableness or legality of searches that were not the subject of Defendant's motion to

suppress, such a challenge has been waived.  *See United States v. Johnson*, 469 F. Supp. 3d 193,

223-24 (S.D.N.Y. 2019) (Gardephe, J.) ("The failure to file a timely motion [to suppress]

constitutes a waiver.") (citing *United States v. Howard*, 998 F.2d 42, 52 (2d Cir. 1993)); *see also*

Fed. R. Crim. P. 12(b)(3)(C), (c)(3).  Therefore, the Court grants the Government's request to

preclude argument on this issue.

### D.   Limiting the Scope of Cross-Examination to Preclude Purportedly Improper Questioning

The Government seeks to "limit the scope of cross-examination to preclude improper

questioning, such as (a) asking questions of witnesses for which there is no good-faith basis or

relevance, and (b) impeaching witnesses with interview reports prepared by agents that are non-

verbatim reports that have not been signed or adopted by the witness or suggesting to the jury

that the contents of any such reports are statements of the witness."  Gov't Mot. *in Limine* at 3-4.

The Court addresses each request in turn.

With respect to the Government's request to preclude Defendant from asking questions of

witnesses for which there is no good-faith basis, Gov't Mot. *in Limine* at 26-27, Defendant states

he "has no intention of asking questions without a good-faith basis," *see* Motovich Opp'n at 14,

and therefore this portion of the request is denied as moot.  However, Defendant argues his

"constitutional right to cross-examine and impeach the credibility of the witnesses against it is

not limited to inquiring only about those acts that the Government itself identifies." *Id.*  The

Court does not view the Government's motion as including such a limitation and refuses to impose such on its own. As the Second Circuit held:

> Although "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness," Fed. R. Evid. 611(b), "[t]he court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination," *id.* "It is, of course, unrealistic to expect that direct examination and cross-examination will be perfectly congruent. . . . The latter need only be reasonably related to the former, and matching the two requires the district court to make a series of judgment calls." *Macaulay v. Anas*, 321 F.3d 45, 53 (1st Cir. 2003).

*United States v. Caracappa*, 614 F.3d 30, 42-43 (2d Cir. 2010). The Court, therefore, precludes questions on cross-examination that are irrelevant or flout the requirements of this Circuit and the Federal Rules of Evidence.

With respect to the Government's request to preclude Defendant from (1) asking questions of witnesses with non-verbatim reports not signed or adopted by the witnesses or (2) suggesting to the jury that the contents of the reports are the witnesses' statements, Gov't Mot. *in Limine* at 27-28, Defendant states he "understands the proper method for impeaching witnesses pursuant to the Federal Rules of Evidence and intends to abide by it," Motovich Opp'n at 15. Therefore, this portion of the request is denied as moot.

**E.    Admitting Party Admissions**

The Government also seeks to introduce as party admissions the statements of (a) Defendant, (b) Defendant's agents, and (c) Defendant's co-conspirators. Gov't Mot. *in Limine* at 4, 28.

***Defendant's Statements***: The Government seeks to admit statements made by Defendant in its case-in-chief. *Id.* at 29. "For example, it intends to offer email and text messages sent by [Defendant]; consensual recordings of statements made by [Defendant]; witness testimony about

21

statements made by [Defendant]; and [Defendant's] statements in third-party records, including, among others, financial and business records." *Id.* The Court grants the Government's motion.

Federal Rule of Evidence 801(d)(2)(A) creates a hearsay carveout for statements offered against an opposing party "made by the party in an individual or representative capacity." As "[e]ach of the above statements will be offered against the opposing party (*i.e.*, by the United States against [Defendant]), and was made in an individual capacity by [Defendant]," Gov't Mot. *in Limine* at 29, these statements fall squarely within this rule. The Government also seeks to preclude Defendant from admitting his statements and statements of his agents either in cross-examination or in his case-in-chief, arguing such statements would constitute hearsay. *Id.* at 29 n.14. The Government notes "[i]t is well-established that a defendant generally is prohibited from introducing his own out-of-court statements at trial." *Id.* (citing *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982); *United States v. Blake*, 195 F. Supp. 3d 605, 610 (S.D.N.Y. 2016) (Marrero, J.)). In his opposition, Defendant argues "the Federal Rules of Evidence explicitly permit a defendant to offer his own (or his alleged co-conspirators') out-of-court statements as non-hearsay so long as he is not offering those statements for the truth." Motovich Opp'n at 15. To the extent the Government seeks to preclude Defendant from offering his statements for the truth of the matter asserted, the Court grants this motion. *See Marin*, 669 F.2d at 84 ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible."). Defendant is not precluded from offering such statements for permissible reasons, such as to demonstrate "the declarant's then-existing state of mind." *See, e.g.*, Fed. R. Evid. 803(3).

***Statements of Defendant's Agents***: The Government seeks to admit "statements made over the course of the charged criminal conspiracy by employees and agents of [Defendant],"

specifying, in particular, "statements made by employees of Midwood Lumber, including statements by Marina Kuyan, Gail Kastner and Rosa Schwartz." *Id.* at 30.  The Government contends these statements, "which come in the form of, among other things, email and text message communications," are admissible under Federal Rule of Evidence 801(d)(2)(D) as statements against an opposing party made by a party's agent or employee on a matter within the scope of that relationship. *Id.*

For a statement to fall within the hearsay carveout of Rule 801(d)(2)(D), a party must establish "(1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency." *Leser v. U.S. Bank Nat'l Ass'n*, 09-CV-2362, 2012 WL 6738402, at \*4 (E.D.N.Y. Dec. 29, 2012) (Matsumoto, J.) (quoting *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537 (2d Cir.1992)).  The Second Circuit has explained an agency relationship exists where a declarant is answerable to a defendant. *See United States v. Rioux*, 97 F.3d 648, 660 (2d Cir. 1996); *United States v. Goldstein*, 21-CR-550, 2023 WL 3662971, at \*7 (E.D.N.Y. May 25, 2023) (Chin, J.) ("a direct reporting relationship is sufficient, but not necessary").  Here, Kuyan, Kastner, and Schwartz were all employees of Midwood Limber and therefore answerable to Defendant.  Gov't Mot. *in Limine* at 31.  While the Government has not shown that these statements were made in their capacity as employees and relate to a matter within the scope of their employment, the Court will conditionally grant this motion, "subject to [the Government's] ability to satisfy the balance of Federal Rule of Evidence 801(d)(2)'s requirements at trial." *Leser*, 2012 WL 6738402, at \*2.

***Statements of Co-Conspirators***:  The Government seeks to admit "prior statements of members of the conspiracy as statements in furtherance of the conspiracy" pursuant to Federal

Rule of Evidence 801(d)(2)(E). *Id.* at 32. The Government notes Defendant's co-conspirators, who "include the Midwood Lumber employees noted above (Kuyan, Kastner and Schwartz), the cooperating witnesses and those similarly situated, among others" made numerous statements "during and in furtherance of the conspiracy" which the Government intends to offer at trial. *Id.* at 33.

"Before admitting a co-conspirator's statement over an objection that it does not qualify under Rule 801(d)(2)(E), a court must be satisfied that the statement actually falls within the definition of the Rule. There must be evidence that there was a conspiracy involving the declarant and the non-offering party, and that the statement was made 'during the course and in furtherance of the conspiracy.'" *Bourjaily v. United States*, 483 U.S. 171, 175 (1987) (quoting Fed. R. Evid. 801(d)(2)(E)). Defendant argues the motion should be denied as premature and without merit because "[t]he Government has provided no such evidence" about the conspirators or the statements made in furtherance of the conspiracy." Motovich Opp'n at 17. While it is true that the Government will need to prove these elements by a preponderance of the evidence, *see United States v. Gupta*, 747 F.3d 111, 124 (2d Cir. 2014), the Court may nonetheless admit these statements on a conditional basis. Pursuant to *United States v. Geaney*, 417 F.2d 1116, 1120 (2d Cir. 1969), a court may "conditionally admit[] co-conspirator statements during the government's presentation of its case." *United States v. Ferguson*, 676 F.3d 260, 273 n.8 (2d Cir. 2011). Then, after the government rests, the Court can make "necessary *Geaney* findings and admit[] the statements." *Id.* Therefore, the Court grants the Government's motion to admit the co-conspirator statements on a conditional basis, subject to a *Geaney* finding.

F.   **Other Act Evidence**

1.   **Legal Standard**

24

"The Federal Rules of Evidence prohibit admission of evidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." *United States v. Mercado*, 573 F.3d 138, 141 (2d Cir. 2009) (cleaned up). The Rules of Evidence do, however, permit admission of such evidence for other purposes. *Id.*

As further described *supra*, "evidence of uncharged criminal activity is not considered other crimes evidence under [Rule 404(b)] if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *Carboni*, 204 F.3d at 44 (citation and internal quotation marks omitted). Where the indictment contains a conspiracy charge, "uncharged acts may be admissible as direct evidence of the conspiracy itself." *United States v. Eppolito*, 543 F.3d 25, 47 (2d Cir. 2008) (citations and internal quotation marks omitted); *see also United States v. Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992) ("An act that is alleged to have been done in furtherance of the alleged conspiracy, however, is not an "'other'" act within the meaning of Rule 404(b); rather, it is part of the very act charged."). Such evidence is admissible where it "show[s] the development of the relationship between" the defendant and his co-conspirators, where it "provid[es] background for the events alleged in the indictment," and where it "enabl[es] the jury to understand the complete story of the crimes charged, or how the illegal relationship between co-conspirators developed." *Mercado*, 573 F.3d at 141 (citations and internal quotation marks omitted).

Alternatively, Federal Rule of Evidence 404(b) provides:

> Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. . . . This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident.

Fed. R. Evid. 404(b)(1) & (2).  "[The Second Circuit and its District Courts] follow an inclusionary rule, allowing the admission of such evidence for any purpose other than to show a defendant's criminal propensity, as long as the evidence is relevant and satisfies the probative-prejudice balancing test of Rule 403 of the Federal Rules of Evidence." *Carboni*, 204 F.3d at 44 (citation and internal quotation marks omitted); *see also United States v. LaFlam*, 369 F.3d 153, 156 (2d Cir. 2004) (noting Second Circuit has adopted an inclusionary approach to other act evidence under Rule 404(b)).

In sum, evidence "offered under [Federal Rule of Evidence 404(b)] may be admitted if the court: (1) determines that the evidence if offered for a purpose other than to prove the defendant's bad character or criminal propensity; (2) determines that the evidence is relevant under [Federal Rules of Evidence 401 and 402] and is more probative than unfairly prejudicial under [Federal Rule of Evidence 403]; and (3) provides an appropriate limiting instruction to the jury, if one is requested." *United States v. Mickens*, 926 F.2d 1323, 1328-29 (2d Cir. 1991) (internal quotation marks and citations omitted).

### 2.    Evidence of Defendant Joshua Markovics' Paying Employees in Cash and Issuing Checks To and Receiving Checks from the Shell Companies[1]

The Government moved to admit evidence showing Defendant Markovics "[paid] workers in cash and us[ed] the shell accounts to divert money from his company Royal Home to himself" as direct evidence of the charged bank fraud, bank fraud conspiracy, and aggravated identity theft offenses, or alternatively as other acts evidence under Rule 404(b).  Gov't Mot. at 36-37.  Specifically, the Government argues such evidence will show Defendant Markovics participated in two alleged criminal schemes involving (1) writing checks to shell company

---

[1] Defendant Markovics pled guilty on July 2, 2024.

accounts in exchange for which Defendant would provide individuals cash—for a fee—to

facilitate individuals paying employees off the books "and evade payroll taxes" and (2)

"issu[ing] checks from companies they controlled to the shell companies," after which Defendant

would "issue[] checks from the shell companies directly to those individuals in their personal

capacities." *Id.* at 36. Both Defendant and Defendant Markovics originally opposed this motion,

arguing the evidence should be excluded under Rules 401, 403, and 404(b) due to, *inter alia*, the

purported lack of specificity in the Government's motion regarding the evidence and the

evidence's lack of probative value regarding the charged offenses. Markovics Opposition to

Gov't Mot. at 3, 5-7, ECF No. 259; Motovich Opp'n at 17-18.

In light of Defendant Markovics' change of plea and the uncertainty regarding whether

the Government will seek to admit such evidence, the Court reserves judgment on this motion.

### 3.   **Evidence of Alleged Witness Tampering**

The Government moves to admit, as direct evidence of Count 18's witness tampering

charge, or alternatively under Rule 404(b), evidenced purporting to show Defendant "engaged in

similar obstructive behavior toward potential witnesses . . . during the same time period charged

in Count 18." Gov't Mot. at 37. Specifically, the Government argues "[e]vidence of

[Defendant's] efforts to dissuade other witnesses from testifying or cooperating with the

[G]overnment, including but not limited to John Doe 3, would function as both direct evidence

of the scheme to tamper with Sarkinovic, as well as other acts evidence, pursuant to Rule 404(b),

of [Defendant's] knowledge, intent, motive, absence of mistake and *modus operandi* while

engaging in such conduct." *Id.* at 37-38; *see generally* Indictment ¶ 7 ("John Doe 3, an

individual whose identity is known to the Grand Jury, was the operator of a construction

company who cashed checks at the Motovich Check-Cashing Business.").

27

Defendant opposes the Government's motion.  First, Defendant argues the Government failed to explain how the Indictment's allegations that Defendant attempted to convince John Doe 3 to obtain a different attorney is inextricably intertwined with the Indictment's allegations that Defendant attempted to pay an individual to not cooperate with law enforcement "months earlier."  Motovich Opp'n at 19.  Second, Defendant asserts the Government's motion is insufficiently specific as to "what 'efforts' by [Defendant] it seeks to admit, [and] what other witnesses aside from John Doe 3 [Defendant] purportedly attempted to dissuade form testifying." *Id.*  Third, Defendant argues this would be impermissible propensity evidence under Rule 404(b). *Id.*  Finally, Defendant contends—in light of the Government's failure "to offer any detail as to the nature of this evidence"—any such other alleged witness tampering evidence is irrelevant under Rule 401 or unduly prejudicial under Rule 403.  *Id.* at 20.

The Court reserves decision on the Government's motion in part and denies the Government's motion in part.  The Court agrees with Defendant that evidence of his alleged witness tampering of John Doe 3 is not direct evidence of, nor inextricably intertwined with or necessary to complete the story of, the Indictment's witness tampering count.  Count 18 alleges Defendant, approximately in or about and between January and June 2019, "did knowingly, intentionally and corruptly persuade, and attempt to do so, and engage in misleading conduct toward Kemal Sarkinovic, with intent to hinder, delay and prevent the communication to a law enforcement officer of the United States information relating to the commission and possible commission of one or more Federal offenses."  Indictment ¶ 44.  The Indictment's factual allegations further assert Defendant "among other things, paid Sarkinovic and members of Sarkinovic's family at least $26,000 in or about February 1, 2019 and June 2019 in exchange for Sarkinovic agreeing not to cooperate with law enforcement."  *Id.* ¶ 24; *see generally* ¶ 23.  That

Defendant may have, in June 2019, "attempted to convince John Doe 3 to fire his lawyer and retain a lawyer that [Defendant] had chosen for John Doe 3 and told John Doe 3 that if John Doe 3 did not do as [Defendant] asked, [Defendant] would view John Doe 3 as a 'rat' and that it would be an 'issue' for John Doe 3," *id.* ¶ 25, is not inextricably intertwined with nor necessary to tell the story of the allegations that Defendant paid Sarkinovic in exchange for him not cooperating with law enforcement. *Cf. United States v. Thomas*, 214 F. Supp. 3d 187, 193 (E.D.N.Y. 2016) (Kuntz, J.) (admitting evidence regarding defendant's alleged involvement in, and police investigation into, a shooting which occurred on the same day as the crime charged in the superseding indictment as "inextricably intertwined with the felon in possession of ammunition charge, and will provide crucial background information to the jury about events that occurred the day of the charged crime"). The Court rejects the Government's argument that this other act evidence is direct evidence of the witness tampering charge because "it shows [Defendant's] relationship with the witnesses." *See* Gov't Reply in Support of Mot. at 9; *see also United States v. Naumovski*, 20-CR-384, 2023 WL 5806171, at *2 (E.D.N.Y. Sept. 7, 2023) (Kuntz, J.) ("The [g]overnment's argument that the contested evidence 'establishes background and context of the defendant's business relationship with Mr. Chmiel' does not rise to the level of 'completing the story' of defendant's conduct in the present case" where defendant was not charged with offense related to the contested evidence).

The Court further reserves its decision on the Government's request to admit as "other acts" evidence under Rule 404(b) evidence showing Defendant allegedly attempted to engage in witness tampering vis-à-vis John Doe 3, as described in paragraph 25 of the Indictment. The Court first recognizes that evidence purporting to show Defendant attempted to convince other witnesses involved with the alleged unlicensed money transmitting business not to cooperate

with the Government would, if it were admissible, go to the purposes of Defendant's knowledge, intent, motive, and absence of mistake, rather than impermissible criminal propensity.

However, the Court reserves its decision on whether such evidence is admissible until the Government further proffers:  (1) the timing of the alleged witness tampering charge relative to the alleged other act evidence regarding John Doe 3 and (2) details of Defendant's alleged witness tampering vis-à-vis John Doe 3.  Count 18 alleges Defendant committed witness tampering "[i]n or about and between January 2019 and June 2019, both dates being approximate and inclusive."  Indictment ¶ 44; *see also id.* ¶¶ 23-24 (alleging Sarkinovic met with federal law enforcement agents on or about January 12, 2019; the next day, Sarkinovic told Defendant that Sarkinovic had met with federal law enforcement agents; and "in or about between [sic] February 1, 2019 and June 2019" Defendant "paid Sarkinovic and members of Sarkinovic's family at least $26,000 . . . in exchange for Sarkinovic agreeing not to cooperate with law enforcement").  Paragraph 25 of the Indictment, on the other hand, alleges Defendant attempted to engage in witness tampering vis-à-vis John Doe 3 "on or about June 5, 2019."  *Id.* ¶ 25.  The timing of alleged other act evidence relative to the crime charged, along with the similarities between the other act evidence and crime charged, is pertinent to the probative nature of the alleged other acts under Second Circuit authority.  *See United States v. Curley*, 639 F.3d 50, 61 (2d Cir. 2011) ("Subsequent acts are admissible under Rule 404(b), but the temporal difference between the charged conduct and the subsequent acts may impact whether the evidence is probative. This Circuit has upheld the admission of subsequent act evidence to prove a state of mind only when it so closely paralleled the charged conduct that it was probative regardless of the temporal difference.") (cleaned up).  Therefore, the Court reserves judgment on this portion of the Government's motion until the Government proffers these details.

To the extent the Government seeks to introduce evidence regarding Defendant's alleged efforts to tamper with witnesses *other* than John Doe 3, the Court reserves judgment because the Government's motion "is far too vague to allow the Court to determine whether the evidence is admissible under Rule 404(b)." *United States v. Townsend*, 06-CR-34, 2007 WL 1288597, at *6 (S.D.N.Y. May 1, 2007) (Keenan, J.), *aff'd sub nom. United States v. Mercado*, 573 F.3d 138 (2d Cir. 2009). The Government seeks to introduce "[e]vidence of [Defendant's] efforts to dissuade other witnesses from testifying or cooperating with the [G]overnment, *including but not limited to John Doe 3*." Gov't Opp'n at 37-38 (emphasis added). While the Government's motion notes the general time period of these other alleged obstructive behaviors—January through June 2019—the Government provides no other detail about this other purported evidence, to include towards whom the alleged behavior was directed, the dates on which the alleged obstructive efforts took place, or what the obstructive efforts even were. "Without a more detailed proffer, it is impossible for the Court to determine" the relevance of other alleged witness tampering, and the Court therefore "reserves judgment on its admissibility . . . until the Government provides a more specific proffer." *Townsend*, 2007 WL 1288597, at *6.

### 4.    Evidence of Allegedly Fabricated and Otherwise Inaccurate Documents

The Government moves pursuant to Rule 404(b) to admit a number of allegedly "fraudulent identification documents" seized during law enforcement searches, to include:  (1) a badge and identification card identifying Defendant as a Police Benefit Association Chaplain with the Village of Montgomery, New York Police Department; (2) "[a] 'United States Government ID' bearing the insignia of the New York Police Department, in the name of David Motovich of Midwood Lumber and Millwork;" (3) a business card indicating Defendant "is the 'Head of Mergers and Acquisitions' for UBS Investment Bank in New York;" and (4) a Covid-19

vaccine card indicating Defendant had been vaccinated, which contradicts Defendant's statement to law enforcement agents that he was not vaccinated.  Gov't Mot. at 38.  The Government argues, in light of its allegations that Defendant "accomplished many of [his] criminal schemes through falsified and fabricated documents," such fabricated documents should be admitted under Rule 404(b) "because they evince his knowledge, intent and consistent *modus operandi* of falsifying documents to suit his interests." *Id.* at 38-39.  Defendant disagrees, arguing the Government is impermissibly seeking to admit such evidence as criminal propensity evidence and, "[e]ven if the Government could articulate a proper purpose," such evidence should be precluded "because it carries a high risk of unfair prejudice that substantially outweighs any probative value."  Motovich Opp'n at 21.

The Court agrees with Defendant and denies the Government's motion to admit the allegedly fraudulent identification documents specified in its motion.  Even assuming *arguendo* the Court agreed the documents could be offered for a permissible purpose under Rule 404(b), the Court finds these documents have limited probative value in this case, as the Government does not allege these purportedly fraudulent documents are related to or were utilized in Defendant's allegedly fraudulent criminal schemes.  Further, the Court finds the limited probative value of such evidence would be substantially outweighed by the danger of unfair prejudice resulting from its admission stemming from an impermissible propensity inference.  As such, the Court denies the Government's motion to admit the aforementioned allegedly fraudulent identification documents.

To the extent the Government seeks to introduce evidence of *other* allegedly fraudulent documents or identification documents found during law enforcement searches, *see* Gov't Mot. at 38-39, the Court reserves judgment because the Government's motion "is far too vague to

allow the Court to determine whether the evidence is admissible under Rule 404(b)," *Townsend*,

2007 WL 1288597, at *6.

## V.      THE GOVERNMENT'S MOTION TO PRECLUDE DEFENDANT'S PROPOSED EXPERT WITNESSES

The Government moves to preclude the testimony of Defendant's two expert witnesses:

Dr. Richard Leo and Dr. Erin Kendall Braun.  Gov't Mot. to Preclude Expert Testimony at 1

("Gov't Mot. to Preclude Expert Test."), ECF No. 246.  Defendant's expert witness notice

explains Dr. Leo would be called "as an expert regarding the criminal investigative process, law

enforcement interview practices, psychological coercion, false confessions, and related matters."

Dr. Leo Witness Notice at 3, ECF No. 246-1; *see also* Supplemental Dr. Leo Expert Disclosure,

ECF No. 262-1.  Dr. Braun would be called to testify:  "on how memory is modulated both by

circumstances at time of encoding, as well as experiences that occur after encoding;" "that

recalling an episodic memory requires the memory be reconstructed, and consequently, it is

susceptible to memory errors and false memories;" and "that time between encoding and recall is

a key factor that predicts memory loss and memory errors, and that memory is particularly

inaccurate when a person is asked to recall events after a long intervening period."  Dr. Braun

Witness Notice at 1, ECF No. 246-2; *see also* Supplemental Dr. Braun Expert Disclosure, ECF

No. 262-2.  Defendant seeks to call these witnesses "to provide information relevant to the jury's

evaluation of the credibility of the Government's witnesses."  Motovich Opp'n to Gov't Mot. to

Preclude Expert Test. at 2, ECF No. 262; *see also id.* at 7 ("Although jurors' common sense may

suggest to them that a cooperating witness would not make statements that are self-

incriminating—behavior that is perceived as irrational and self-destructive—Dr. Leo's testimony

will educate jurors regarding the potentially psychologically coercive process of law

enforcement interrogation and why false statements and confessions may, and indeed *do* occur.

33

His testimony will therefore be relevant and helpful to the jurors' consideration of the credibility of cooperating witnesses, who have been subject to law enforcement interrogation.").

The Government argues the Court should exclude Dr. Leo's and Dr. Braun's proposed expert testimony because: (1) Defendant did not provide proper notice under Federal Rule of Criminal Procedure 16(b)(1)(C); (2) the proposed expert testimony is improper under Federal Rule of Evidence 702 due to its irrelevance, unreliability, and unhelpfulness to the jury; and (3) even if this proposed testimony had any probative value, such probative value would be substantially outweighed "by the high likelihood of unfair prejudice to the government, confusion of the issues, misleading the jury, undue delay, and wasting the time of the Court, jury, and government."  Gov't Mot. to Preclude Expert Test. at 1-2.

A.      **Legal Standard**

The decision to admit or to exclude expert testimony falls squarely within the discretion of the trial court. *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999) ("A decision to exclude expert testimony rests soundly with the discretion of the trial court and shall be sustained unless manifestly erroneous.") (internal citation and quotation marks omitted).  Under Federal Rule of Evidence 702, the Court must determine whether the proposed expert witness is qualified based on the following factors:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)

(holding a district court must "ensure that any and all scientific testimony or evidence admitted is

not only relevant, but reliable").

**B.      Defendant's Proposed Expert Witnesses**

Assuming without deciding that Defendant gave proper notice of his proposed expert

testimony under Federal Rule of Criminal Procure 16(b)(1)(C), the Court agrees with the

Government and grants its motion to preclude Dr. Leo and Dr. Braun's proposed testimony. This

Court excluded testimony similar to that offered by Dr. Leo in *United States v. Thomas*, 214 F.

Supp. 3d 187 (E.D.N.Y. 2016) (Kuntz, J.). In that case, the Court precluded the testimony of

defendant's proposed expert witness, who was to testify regarding "(1) 'specific interrogation

techniques and the relation of those techniques to false statements made by those interrogated'

and (2) 'the guilt-presumptive nature of the interrogation and the use of persuasion and coercion

to attempt to obtain an admission of guilt.'" *Id.* at 191 (quoting witness notice). The Court

reasoned, in part:

> Here, the Court finds Dr. Cutler's proposed testimony is within the
> common knowledge of the trier of fact. An expert must demonstrate
> "knowledge, skill, experience, training, or education" that will help
> the factfinder. Fed. R. Evid. 702. Expert witnesses are unnecessary
> when the factfinder is "as capable of comprehending the primary
> facts and of drawing correct conclusions from them as are witnesses
> possessed of special or peculiar training." *Salem v. U.S. Lines Co.*,
> 370 U.S. 31, 35 (1962). Dr. Cutler's proposed testimony about the
> relationship between interrogation techniques and false statements
> and the guilt-presumptive nature of the interrogation is within the
> common knowledge of the factfinder. The jury is competent to take
> into consideration the effects of interrogation without the aid of an
> expert.

*Id.* The Court adopts the same reasoning as to the facts of this case. The proposed topics of Dr.

Leo's testimony ultimately go to "the relationship between interrogation techniques and false

testimony and the guilt-presumptive nature of the interrogation," which this Court found—and again finds—to be "within the common knowledge of the factfinder." *Id.* While Defendant argues Dr. Leo's testimony will provide "general background knowledge" about "the potentially psychologically coercive process of law enforcement interrogation and why false statements and confessions may, and indeed *do*, occur," Motovich Opp'n to Gov't Mot. to Preclude Expert Test. at 7, 10-11, the Court rejects the proposition that jurors need an expert witness to so opine. *See Kogut v. Cnty. of Nassau*, 06-CV-6695, 2013 WL 3820826, at *7 (E.D.N.Y. July 22, 2013) (Seybert, J.), *aff'd in part,* 789 F.3d 36 (2d Cir. 2015), and *aff'd in part sub nom. Restivo v. Hessemann*, 846 F.3d 547 (2d Cir. 2017) (affirming reasoning precluding false confession testimony predicated, in part, on the logic that "[e]ssentially, this is an area that the jurors can decide for themselves. The jury can determine if Kogut was exhausted, high, or submitted to constant clues given to him by Detectives Volpe, Sirianni, and Dempsey, or that Kogut believed he failed the test, was terrified of the detectives and finally that he was worn down by refusals to allow him to call a lawyer or his girlfriend.") (internal quotation marks and citation omitted).

The Court further finds Dr. Braun's proposed expert testimony "that the process and circumstances by which memories are created and recalled can lead to memory error and false memory" to be within the common knowledge of the fact-finder. *See* Motovich Opp'n to Gov't Mot. to Preclude Expert Test. at 10. Dr. Braun's proposed testimony, which concerns memory and the effect of time on memory, would be unhelpful to a jury, who would be more than capable of considering the fallibility of memory and the ways memory change over time without the aid of an expert. *See United States v. Coutentos*, 651 F.3d 809, 821 (8th Cir. 2011) ("The jury was familiar with what happens to memory over time: it understood how questioning, imagining, and discussing with others affects memories.").

36

Moreover, as the Court found in *Thomas*, such exclusion would not "leave Defendant without protection" as "cross-examination of witnesses is sufficient to achieve the same effect as the proposed [expert testimony]." 214 F. Supp. 3d at 192; *see also Davis v. Alaska*, 415 U.S. 308, 316 (1974) ("Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested."); *California v. Green*, 399 U.S. 149, 158 (1970) (cross-examination is the "greatest legal engine ever invented for the discovery of truth").

As such, the Court grants the Government's motion to preclude Dr. Leo and Dr. Braun as expert witnesses.

## VI.     THE GOVERNMENT'S MOTION TO PRECLUDE CERTAIN CROSS-EXAMINATION

The Government seeks to preclude cross-examination of two witnesses—Reginald Garcia and Jonathan Miller—regarding certain information.  Specifically, the Government seeks to preclude cross-examination of Mr. Garcia's 2019 conviction for misdemeanor simple assault under Pennsylvania law and cross-examination of U.S. Internal Revenue Service ("IRS") Supervisory Special Agent Jonathan Miller's involvement as a defendant in a civil lawsuit. Government Mot. to Preclude Certain Cross-Examination ("Gov't Mot. to Preclude Certain Cross-Examination") at 1, ECF No. 270.  The Court addresses each request in turn.

### A.     The Government's Motion to Preclude Cross-Examination of Witness Reginald Garcia's Misdemeanor Assault Conviction

With respect to the Government's request to preclude questioning Mr. Garcia about his prior misdemeanor assault conviction, *id.* at 2-3, the Court grants the motion.  Pursuant to Federal Rule of Evidence 609(a)(2), the Government argues Mr. Garcia's conviction is "wholly unrelated to Garcia's credibility or truthfulness." *Id.* at 3.  In response, Defendant correctly notes the Government applied the wrong provision under Rule 609 because Mr. Garcia's conviction for misdemeanor simple assault in the second degree is punishable under Pennsylvania law for up to

*two years*. Motovich Opp'n to Gov't Mot. to Preclude Certain Cross-Examination at 2, ECF No.

277 (citing 18 Pa. Cons. Stat. § 1104 (2018)). Therefore, Mr. Garcia's prior conviction falls

under Rule 609(a)(1), which covers crimes "punishable . . . by imprisonment for more than one

year." Fed. R. Evid. 609(a)(1). However, the Court's analysis does not end there. Because Mr.

Garcia is not a defendant in the case, Rule 609(a)(1)(A) requires the Court to analyze the

conviction under Rule 403. Fed. R. Evid. 609(a)(1)(A). The reasoning in *Coldsmith v. Agency*

*Insurance Co.*, a case cited by both parties, is instructive. 556 F. Supp. 3d 445, 452 (M.D. Pa.

2021) ("The conviction for simple assault that post-dates the incident at issue in this suit does not

shed light on [the witness's] character for truthfulness."). The Court finds the probative value of

Mr. Garcia's misdemeanor simple assault conviction on his propensity for truthfulness is low and

substantially outweighed by unfair prejudice. Further, questioning about this conviction runs the

risk of confusing the issues and causing undue delay. *See United States v. Estrada*, 430 F.3d

606, 621 (2d Cir. 2005) ("The district court may have been justified . . . had it refused to permit

the defendant to impeach government witnesses with crimes of violence, which may bear so

marginally on honesty or veracity, depending on the circumstances of those crimes, as to justify

exclusion under Rule 609(a)(1)."); *see also* Gov't Mot. to Preclude Certain Cross-Examination at

3 ("Garcia did not commit assault or attempted assault in relation to this case—and thus proof of

his prior conviction and sentence would lack any probative value at this trial.").

### B.     The Government's Motion to Preclude Cross-Examination of Witness Special Agent Miller's Lawsuit-Involvement

The Government also seeks to preclude Defendant from questioning Special Agent Miller

about a civil lawsuit in which he was named as a defendant. Gov't Mot. to Preclude Certain

Cross-Examination at 3-4. The action was brought by SL Tax, a tax preparation business

operating in Brooklyn, New York, against the IRS and a number of individuals employed by the

IRS, including Special Agent Miller. Amended Complaint at 1-2, *Zirin Tax Co., Inc. v. United States*, 24-CV-1511, ECF No. 23 (E.D.N.Y. June 20, 2024) (Merle, J.). The Amended Complaint, filed on June 20, 2024, alleges the defendants violated the Administrative Procedure Act ("APA") and the plaintiff's Fifth Amendment due process rights by suspending the plaintiff's tax identification number, or EFIN, without notice and without providing a factual basis, thereby blocking the plaintiff's ability to e-file taxes in the middle of tax season. *Id.* at 4, 13-19. The plaintiff claims the suspension was "arbitrary, capricious, and an abuse of discretion." *Id.* at 18. The Amended Complaint also alleged customers interviewed as part of the IRS investigation "felt intimidated," and were subject to "disparaging comments" from IRS agents. *Id.* at 7. The Amended Complaint contains no allegations of dishonest conduct specifically on the part of Agent Miller. *See generally id.*

The Court grants the Government's motion. Defendant argues he should be permitted to question Special Agent Miller about the civil lawsuit pursuant to Federal Rule of Evidence 608(b), which permits cross-examination into extrinsic evidence to prove specific instances of a witness's conduct "if they are probative of the character for truthfulness or untruthfulness of" the witness. Fed. R. Evid. 608(b)(1); *see also* Motovich Opp'n to Gov't Mot. to Preclude Certain Cross-Examination at 6. Defendant claims the "allegations in the civil lawsuit brought against Special Agent Miller involve dishonest conduct and are therefore probative of his credibility." Motovich Opp'n to Gov't Mot. to Preclude Certain Cross-Examination at 7. The Court disagrees. "Rule 608(b) permits evidence of prior malfeasance by a witness under cross-examination only under very limited circumstances that are probative of truthfulness." *United States v. Ahmed*, 14-CR-277, 2016 WL 3647686, at *3 (E.D.N.Y. July 1, 2016) (Irizarry, J.). "[T]he existence of a complaint containing unproven allegations or a settlement agreement

39

lacking any adverse findings probative of the witness' [sic] truthfulness" will not be considered. *Id.*; *see also United States v. Dekattu*, 18-CR-0474, 2019 WL 885620, at \*1 (E.D.N.Y. Feb. 22, 2019) (Ross, J.) (precluding cross-examination where the "case involved no findings of fact or credibility findings as to Officer Villafane"). Here, no findings of fact have been made at all as to the allegations in the Amended Complaint. *See Zirin Tax Co., Inc. v. United States*, 24-CV-1511, ECF No. 23 (E.D.N.Y. June 20, 2024) (Merle, J.). Defendant's attempts to distinguish the instant civil lawsuit from those in the above cited cases do not hold weight. The fact that the lawsuit in which Agent Miller is a defendant "remains active," Motovich Opp'n to Gov't Mot. to Preclude Certain Cross-Examination at 8, does not negate the fact that the allegations in the complaint are unproven and, therefore, not probative. Further, as previously stated, the Amended Complaint does not make specific allegations regarding Agent Miller's truthfulness nor have there been any findings in that case as to Agent Miller's truthfulness, as required to bring it within the ambit of Rule 608(b). Allegations of deprivation of Fifth Amendment due process rights and violations of the APA, without more, do not go to a defendant's truthfulness. Therefore, cross-examination of Agent Miller on the subject of the civil lawsuit is properly precluded.

## VII.   THE GOVERNMENT'S MOTION TO PRECLUDE DEFENDANT'S PROPOSED JURY INSTRUCTIONS AS TO COUNT ONE

The Government moved to preclude Defendant's proposed jury instructions as to Count One. ECF No. 267. The Court reserves decision on the Government's motion until the jury charge conference.

## VIII.   CONCLUSION

For the reasons above, Defendant's motions *in limine* are GRANTED in part and DENIED in part; the Government's motions *in limine* are GRANTED in part, RESERVED in

part, and DENIED in part; the Government's motion to preclude Defendant's proposed expert

testimony is GRANTED; the Government's motion to preclude certain cross-examination is

GRANTED; and the Government's motion to preclude Defendant's proposed jury instructions as

to Count One is RESERVED.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: July 2, 2024
    Brooklyn, New York