UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

DAVID MOTOVICH,

                    Defendant.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**
21-CR-497 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

Before the Court is Defendant David Motovich's motion requesting temporary release from custody to attend a family event. Def.'s Mot. for Temp. Release ("Motion"), ECF No. 402. For the reasons stated below, the Court **DENIES** Defendant's request for temporary release.

## BACKGROUND

On July 30, 2024, following an approximately three-week jury trial, Defendant David Motovich ("Defendant") was convicted on the following sixteen counts of an eighteen-count Indictment: (1) operating an unlicensed money transmitting business, in violation of 18 U.S.C. § 1960; (2) failure to file currency transaction reports, in violation of 31 U.S.C. §§ 5313(a) and 5322(b); (3) four counts of bank fraud, in violation of 18 U.S.C. § 1344; (4) conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349; (5) seven counts of money laundering, in violation of 18 U.S.C. § 1957(a) and (b); (6) aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1), (b), and (c)(5); and (7) conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. *See* Jury Verdict, ECF No. 349.

Following Defendant's conviction, the Government moved for Defendant's detention pending sentencing under 18 U.S.C. § 3143, arguing Defendant failed to show he was not a flight risk by clear and convincing evidence. *See* Tr. 17–32, ECF No. 370. Defendant opposed this motion. *See id.* The Court granted the Government's motion and ordered Defendant remanded to custody. Remand Order, ECF No. 350. On interlocutory appeal, the Second Circuit affirmed the

1

Court's detention order. Order of U.S. Court of Appeals for the Second Circuit, ECF Nos. 355, 366.

On November 18, 2024, Defendant renewed his motion for bond pending sentencing. Motion for Bond, ECF No. 369. On December 6, 2024, the Court denied Defendant's renewed motion, finding Defendant failed to demonstrate by clear and convincing evidence he is not likely to flee. Mem. and Order ("Detention Order"), ECF No. 371.

On July 30, 2025, Defendant filed a motion for temporary release to attend his eldest son's religious engagement ceremony. Def.'s Mot. for Temp. Release ("Motion"), ECF No. 402. Defendant requests he be "released under the custody of the [U.S. Marshals Service] for the single day of August 10, 2025 . . . [from] 10 a.m. [until] . . . no later than 10 p.m. that same day." *Id.* at 1–2. Defendant offers to "pay the cost of the Marshals' supervision for the day, so that the government does not expend any taxpayer money for this service." *Id.* at 2.

## LEGAL STANDARD

Under Section 3143(a)(1) of the Bail Reform Act, defendants awaiting sentencing face a presumption of detention. *See United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004) (holding Section 3143(a) "creates no general expectation of post-verdict liberty" and "establishes a presumption in favor of detention."). To rebut this presumption, defendants must demonstrate "by clear and convincing evidence" they "[are] not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(a)(1). Defendants failing to meet this burden must be detained pending sentencing. *Id.*

Importantly, the Bail Reform Act "does not permit a two-tiered bail system in which defendants of lesser means are detained pending trial while wealthy defendants are released to self-funded private jails." *United States v. Boustani*, 932 F.3d 79, 82 (2d Cir. 2019). "To interpret the

Bail Reform Act as requiring district courts to permit wealthy defendants to employ privately funded armed guards where an otherwise similarly situated defendant without means would be detained would violate this core principle." *Id.*

## ANALYSIS

Defendant fails to show, by clear and convincing evidence, that he is not likely to flee during his "several hours of requested temporary release." Def.'s Reply ("Reply") at 4, ECF No. 406.

I. Defendant Continues to Pose a Risk of Flight.

As established at trial, and as affirmed by the Second Circuit, Defendant poses a risk of flight pending sentencing. Such risk is not mitigated by one day of release. Defendant faces "significant terms of imprisonment," including a mandatory minimum sentence of twenty-four months' imprisonment for his conviction for Aggravated Identity Theft under 18 U.S.C. § 1028A(a)(1), (b), and (c)(5).[1] Defendant possesses "significant financial resources," likely "exceeding that reflected on paper, because much of his wealth is actually held in other people's names." Gov't Opp'n at 3, ECF No. 404; Detention Order at 3–4. Defendant has a history of "use of fraudulent identification." Gov't Opp'n at 3 (quoting Detention Order at 3). Defendant's family members maintain "substantial overseas ties and access to private jets and yachts." *Id.* (citing Detention Order at 3). And Defendant seeks to attend an event with the same individuals and family members who participated in and benefited from his illegal check-cashing scheme. *Id.* The

---

[1] The Presentence Investigation Report filed by the United States Probation Department on July 1, 2025, calculates Defendant's Sentencing Guidelines range to be 262 to 327 months' imprisonment, in addition to the mandatory twenty-four months for Aggravated Identity Theft. Presentence Investigation Report ("PSR"), ECF No. 393.

Court concurs with the Government that, "[e]ven if released for just one day, [Defendant] could turn his to family connections and phenomenal resources to flee the jurisdiction." *Id.*

Defendant argues he poses no risk of flight considering his $20 million secured bond and that he requests only "several hours" of temporary release. Reply at 2, 4. Defendant has not demonstrated by clear and convincing evidence that the risk of forfeiting his $20 million bond constitutes a sufficient deterrent to flight, particularly given ample evidence $20 million is a fraction of Defendant's and his family's total wealth. *See* Detention Order at 3. And the proposed duration of release does not sufficiently mitigate Defendant's risk of flight—"several hours" is sufficient time to flee the jurisdiction. *See infra* Section II.

Defendant directs the Court to law on pretrial detention under the Bail Reform Act and emphasizes his "perfect record of three years of pretrial supervision under home detention." Motion at 3. But the rules governing pretrial detention—such as the temporary release provision at 18 U.S.C. § 3142(i)—do not automatically extend to defendants in presentence detention. *See, e.g.*, *United States v. Amanat*, 454 F. Supp. 3d 358, 365 (S.D.N.Y. 2020) (Gardephe, J.) ("18 U.S.C. § 3142 . . . has no obvious application to defendants who have been found guilty at trial and await sentencing"). Because Defendant fails to show by clear and convincing evidence he poses no risk of flight under 18 U.S.C. § 3143(a)(1), the Court does not reach the downstream analysis applicable to pretrial detention set forth at 18 U.S.C. § 3142.[2]

---

[2] The Court does not address 18 U.S.C. § 3145 and the "exceptional reasons" "safety valve" provision therein. 18 U.S.C. § 3145 applies only to detention pursuant to 18 U.S.C. § 3143(a)(2) or (b)(2), which governs certain crimes, including, notably, crimes of violence as contemplated under 18 U.S.C. § 3142(f)(1). But Defendant is detained pursuant to 18 U.S.C. § 3143(a)(1).

II.     Defendant's Offer to Compensate the Marshals Does Not Negate His Risk of Flight.

Defendant seeks to bolster his request for temporary release by offering to pay for supervision by the United States Marshals' Service. Defendant's offer to pay the United States Marshals' Service for the duration of his proposed temporary release does not change the calculus under 18 U.S.C. § 3143(a)(1). If anything, granting Defendant's request based on his offer to pay the cost of supervision would contravene the intent of the Bail Reform Act as articulated by the Second Circuit: wealthy defendants are not entitled to benefits—such as release pending legal proceedings—that an otherwise similarly situated defendant would be denied. *See Boustani*, 932 F.3d at 82.

Defendant states he is not seeking a "special rule for temporary release because he is wealthy." Reply at 3 (internal quotation marks omitted). Rather, Defendant asserts he is "only invok[ing] a statutory right" in requesting the Court exercise its discretion to allow temporary release and is "offer[ing] this voluntary condition—not required under 18 U.S.C. § 3142(i)— because he has the financial means to do so." *Id.* at 4–5. But Defendant's careful parsing misses the mark. Defendant's wealth allows him to offer this "voluntary condition" in support of his request for temporary release. Otherwise similarly situated, but less wealthy, defendants are unable to make this same offer in support of their own requests for temporary release. This is the exact paradigm contemplated in *Boustani*.

## CONCLUSION

Defendant fails to demonstrate by clear and convincing evidence he is not likely to flee during his proposed period of release. Consequently, Defendant fails to rebut the presumption of detention pending sentencing. The Court **DENIES** Defendant's motion and **CONTINUES** Defendant's order of detention.

SO ORDERED.

**s/WFK**

_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: August 8, 2025
       Brooklyn, New York

6